1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

11  JAMES JOHNSON,                           Case No.: 23-CV-481 JLS (AHG)

12                           Plaintiff,      **ORDER (1) GRANTING IN PART**
                                             **AND DENYING IN PART**
13  v.                                       **PLAINTIFF'S *EX PARTE* MOTION;**
                                             **AND (2) SCREENING SECOND**
14  MARTIN O'MALLEY, Commissioner,           **AMENDED COMPLAINT**
    Social Security Administration;[1] ERIC V.   **PURSUANT TO 28 U.S.C. § 1915(e)(2)**
15  BENHAM, Administrate Law Judge;
16  LAURA MIDDLETON, Administrative          (ECF Nos. 46, 50)
    Appeals Judge; MS. KAWANO (full
17  name and title to be ascertained); and
    DOES 4 to 100,
18
19                           Defendants.

20

21          Presently before the Court are Plaintiff James Johnson's Second Amended

22  Complaint ("SAC," ECF Nos. 46, 46-1)[2] and *Ex Parte* Motion to Transfer Exhibits and

23

24  _____

25  [1] Martin O'Malley was sworn in as the Commissioner of Social Security on December 20, 2023.  *See*
    *Commissioner*, Social Security Administration, https://www.ssa.gov/agency/commissioner/ (last visited
26  May 2, 2024).  So, pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley is automatically
    substituted for Kilolo Kijakazi as a defendant in this action.
27

28  [2] The SAC was filed in two parts; the first 84 pages (SAC ¶¶ 1–407) are contained in ECF No. 46, while
    pages 85 to 169 (SAC ¶¶ 408–976) can be found in ECF No. 46-1.  As the internal page and paragraph

Limit Review ("Mot.," ECF No. 50).  Having carefully considered Plaintiff's submissions and the law, the Court rules as follows.

## BACKGROUND

Plaintiff, proceeding *pro se*, initiated this action against the Commissioner ("Commissioner") of the Social Security Administration (the "SSA" or "Agency"), on March 16, 2023.  *See* ECF No. 1.  Plaintiff moved for leave to proceed *in forma pauperis* ("IFP") and for the appointment of counsel the same day.  *See* ECF Nos. 2, 3.  Though Plaintiff styled his suit as a social security matter brought under 42 U.S.C. § 405(g) ("§ 405(g)"), he also asserted several other causes of action.  *See* ECF Nos. 1, 1-2.  Plaintiff then filed a myriad of additional motions.  *See* ECF Nos. 4, 6, 13, 14, 17, 20, 22, 26.

On May 31, 2023, Plaintiff filed his First Amended Complaint ("FAC," ECF No. 23).  Before the FAC could be screened—or any pending motions could be ruled on—this case was low-numbered to the undersigned in accordance with Civil Local Rule 40.1.g due to commonalities between this matter and a previously filed case: *Johnson v. Saul*, 20-CV-747 JLS (AHG).  *See* ECF No. 31.

On September 7, 2023, this Court granted Plaintiff's Motion to Proceed IFP but dismissed the FAC without prejudice pursuant to 28 U.S.C. § 1915(e)(2) for failure to comply with Federal Rule of Civil Procedure 8.  *See generally* ECF No. 32.  The Court explained that the 1,148-page pleading was so unwieldly that "further screening of Plaintiff's FAC on the merits would be a waste of judicial resources."  *Id.* at 20.  The Court granted Plaintiff sixty days in which to file a second amended complaint, but also cautioned Plaintiff against refiling "a similarly opaque and overlong amended complaint" in the future.  *Id.* at 20–21.

On September 22, Plaintiff filed several Motions for Reconsideration.  *See* ECF Nos. 34, 36, 37, 38.  One such motion asked the Court to reconsider the dismissal of the

---

numbers provided by Plaintiff flow seamlessly from the first document to the second, the Court will cite only to "SAC" when referencing either document.

FAC.  *See* ECF No. 38.  The Court denied said Motion because none of Plaintiff's asserted arguments constituted proper grounds for reconsideration; Plaintiff had not presented new evidence, cited an intervening change in the law, nor argued that the Court committed clear error in its Rule 8 analysis.  *See* ECF No. 39 at 6.

After twice requesting—and receiving—extensions of time, *see* ECF Nos. 40, 41, 43, 45, Plaintiff filed his Second Amended Complaint on March 11, 2024.  The SAC named several defendants not listed in the FAC, *see* SAC at 1, as discussed below.  The instant *ex parte* Motion followed on March 25.

## PLAINTIFF'S *EX PARTE* MOTION

In his *ex parte* Motion, Plaintiff asks the Court to "[t]ransfer" certain filings to the SAC, including: (1) all of the exhibits either attached to his FAC or contained on two CDs lodged with the Court on March 11, 2024;[3] (2) Plaintiff's Declaration of True Identities ("Identities Decl.," ECF No. 7); and (3) two exhibits attached to the Identities Declaration, which Plaintiff has labeled as "Exhibit 58, 'Medical Records List of Providers (7-29-16),'" and "Exhibit 252, 'Victim's Criminal Complaint (July 14, 2022),'" (respectively, ECF Nos. 7-1 and 7-2).  *See* Mot. at 2.  Plaintiff explains that he compiled and grouped the FAC's exhibits while "he was still housed and still had resources," and that disassembling and recompiling his exhibits now would "impose[] an undue hardship."  SAC ¶ 28.

The Court previously declined to exempt Plaintiff from attaching supporting exhibits to future amended pleadings, given the "well-established" rule that an "amended complaint supersedes the original."  ECF No. 32 at 11 (quoting *Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015)).  The Court noted that, just as refiling already-submitted exhibits would be onerous for Plaintiff, sifting through hundreds or thousands of pages of superseded pleadings to locate exhibits would be similarly burdensome for the Court.  *See id.*

---

[3] Per Plaintiff, the exhibits attached to the FAC "are the same, or nearly the same," as those contained on the CDs.  ECF No. 47 at 2.

Nonetheless, in light of Plaintiff's representations and the circumstances of this case,[4] the Court finds that the interests of justice are served by granting Plaintiff a limited, one-time exception to the requirement that he refile his exhibits.  Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion.  While nothing will be "transferred" in any physical sense, the Court will consider the SAC to have incorporated by reference (1) the Identities Declaration and its two exhibits (ECF Nos. 7, 7-1, 7-2); and (2) exhibits attached to the FAC that are *clearly* cited in the SAC and *readily* found on this case's Docket.  To the extent Plaintiff seeks to append other previously filed exhibits to the SAC or alter the scope of the Court's screening inquiry, his Motion is denied.

## SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2)

### I.    Legal Standard

Because Plaintiff is proceeding IFP, his SAC requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2).  *See, e.g.*, *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2002) (per curiam) (holding 28 U.S.C. § 1915(e)(2) screening applies to non-prisoners proceeding IFP).  This mandatory screening requirement extends to "IFP cases seeking judicial review of Social Security rulings."  *Duryea v. Soc. Sec. Admin.*, No. CV-12-748-PHX-LOA, 2012 WL 1983344, at *1 (D. Ariz. June 4, 2012) (citations omitted).  Under 28 U.S.C. § 1915(e)(2)(B), the Court must *sua sponte* dismiss a complaint, or any portion of it, that is frivolous, is malicious, fails to state a claim, or seeks damages from defendants who are immune.  *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000).  "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'"  *Nordstrom v. Ryan*, 762 F.3d 903, 907 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)).

As relevant to § 1915(e)(2)(B)(i), "[w]hen a court does not have jurisdiction to hear an action, the claim is considered frivolous."  *Johnson v. E. Band Cherokee Nation*,

---

[4] In a separate filing, Plaintiff explains he was unable to attach the exhibits to the SAC due to difficulties he encountered while trying to use this District's CM/ECF system.  *See* ECF No. 49 at 2.

718 F. Supp. 6, 6 (N.D.N.Y. 1989). Even were that not so, a federal court has an independent obligation to confirm whether it has subject matter jurisdiction over an action before it. *See, e.g.*, *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278 (1977) (explaining courts are "obliged to inquire *sua sponte* whenever a doubt arises as to the existence of federal jurisdiction"). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Federal courts are "presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *A–Z Int'l v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003) (quoting *Stevedoring Servs. of Am., Inc. v. Eggert*, 953 F.2d 552, 554 (9th Cir. 1992)).

Meanwhile, "[t]he standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.* at 678–79. And "[w]hile factual allegations are accepted as true, legal conclusions are not." *Hoagland v. Astrue*, No. 1:12-cv-00973-SMS, 2012 WL 2521753, at *3 (E.D. Cal. June 28, 2012) (citing *Iqbal*, 556 U.S. at 678).

Further, Federal Rule of Civil Procedure 8 requires pleadings to state "a *short* and *plain* statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). Rule 8 "applies to good claims as well as bad," *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996); "[e]ach allegation must be simple, concise, and direct," Fed. R. Civ. P. 8(d)(1). "While 'the proper length and level of clarity for a pleading cannot be defined with any great precision,' Rule 8(a) has 'been held to be violated by a

pleading that was needlessly long, or a complaint that was highly repetitive, or confused, or consisted of incomprehensible rambling.'" *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011) (quoting 5 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1217 (3d ed. 2010)).

Ultimately, courts have a duty to construe a pro se litigant's pleadings liberally. *See Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). Even when liberally interpreting a pro se complaint, however, a court may not "supply essential elements of [claims] that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). That said, a district court should grant leave to amend dismissed claims unless the court determines that "the pleading could not possibly be cured by the allegation of other facts." *Lopez*, 203 F.3d at 1130–31 (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

## II.   Contents of Plaintiff's Second Amended Complaint

With its 169 pages, 976 numbered paragraphs, 175 footnotes, and numerous incorporated exhibits, summarizing the SAC's allegations is no small task. Locating the pertinent facts is made more difficult by Plaintiff's frequent resort to irrelevant legal arguments. *See, e.g.*, SAC ¶¶ 253–57 ("Maxim: He who does not forbid, when he might forbid, commands. . . . Maxim: Res ispa [sic] loquitur."). The SAC thus edges dangerously close to the wrong side of the line drawn by Rule 8(a). Still, "verbosity or length is not by itself a basis for dismissing a complaint based on Rule 8(a)." *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131 (9th Cir. 2008). And the Court acknowledges that the SAC represents a vast improvement over the FAC, which was twice the length and half as organized. *See* ECF No. 32 at 16–17. So, after a thorough review of Plaintiff's submissions, the Court declines to dismiss the SAC on Rule 8 grounds and will proceed to screen for the other issues enumerated in 28 U.S.C. § 1915(e)(2)(B).

### A.   *Plaintiff's Factual Allegations*

The SAC largely separates its factual allegations into two sections: (1) the denial of Plaintiff's Title II disability benefits; and (2) the consequences of his application—

allegedly submitted under duress—for early retirement benefits, which include the reduction of his future retirement income and Title XVI benefits.[5]   The Court will summarize each set of allegations separately.

### 1.    Denial of Title II Benefits

Plaintiff, a 66-year-old resident of San Diego, SAC ¶ 13, applied for Title II disability benefits on May 22, 2012, *id.* ¶ 69.  Plaintiff claimed to suffer from the following impairments: (1) "peripheral neuropathy," (2) "bilateral knee," and (3) "memory loss."  *Id.* ¶ 70.  On the application, Plaintiff "guessed" that these conditions had "onset dates starting July 2011."  *Id.* ¶ 71.  Plaintiff later added a claim for "cardiac ischemia" to his application.  *Id.* ¶ 95.  In its initial determination, the Agency denied Plaintiff Title II benefits.  *See id.* ¶ 88.  Plaintiff requested reconsideration, and, after review, the Agency again denied his application.  *See id.* ¶¶ 89–90.  On March 20, 2014, Plaintiff appealed the post-reconsideration decision.  *Id.* ¶ 90.

Meanwhile, sometime between 2014 and 2016, Plaintiff's treating physician (identified as "Dr. T.") compiled a Consultative Exam Report ("CER"), which included an extensive review of Plaintiff's medical records and a comprehensive list of his medical providers.  *See id.* ¶¶ 90–91, 93, 99.  The CER, which was sent to the Agency by certified mail on June 29, 2016, also verified Plaintiff's disabling medical conditions and noted corrected onset dates between January 1, 2009, and January 1, 2010.  *See id.* ¶¶ 95–96.

A hearing ("Hearing 1") before Defendant Administrative Law Judge Eric V. Benham (the "ALJ" or "ALJ Benham") was scheduled for December 20, 2016.  *Id.* ¶¶ 16, 113.  Prior to the hearing, Plaintiff sent the Agency several files and requests regarding new evidence, potential telephonic appearances for his physicians, and subpoenas.  *See id.* ¶¶ 105–07, 112.  The ALJ did not address any of these requests during Hearing 1.  *Id.* ¶ 114.

---

[5] "Title II (SSDI) of the Social Security Act ("Act"), 42 U.S.C. §§ 401 *et seq.*, provides benefits to persons with mental or physical disabilities, and Title XVI (SSI) of the Act, 42 U.S.C. §§ 1381 *et seq.*, provides benefits to indigent persons with disabilities."  *Kildare v. Saenz*, 325 F.3d 1078, 1080 (9th Cir. 2003).

On July 12, 2017, the ALJ issued a written decision denying Plaintiff Title II benefits. *Id.* ¶ 122. Plaintiff alleges the ALJ erred in several respects, including, *inter alia*, by failing to review the evidence and to apply regulations correctly. *See id.* ¶¶ 126–34. Plaintiff appealed, and on October 29, 2018, the Appeals Council vacated the ALJ's post-Hearing-1 decision and ordered a new ALJ hearing ("Hearing 2"). *Id.* ¶¶ 135, 139. Per Plaintiff, the Appeals Council did not address most of the issues he raised in his appeal, but "did specifically order the ALJ to review all disabilities/amended claims." *Id.* ¶ 140.

The Agency attempted to schedule Hearing 2 several times, but Plaintiff objected on each occasion because of the ALJ's continuing failure to address pre-hearing issues. *See id.* ¶ 141. Plaintiff also filed requests pursuant to the Americans with Disabilities Act ("ADA") in the hopes of having Hearing 2 conducted telephonically. *Id.* ¶ 142. Plaintiff did not receive responses to any of these requests. *See id.* ¶ 147.

Eventually, Hearing 2 was scheduled for August 9, 2022. *Id.* ¶ 174. Plaintiff could not attend Hearing 2, however, due to the risk of contracting COVID-19 and because symptoms of Plaintiff's chronic illnesses "mirror[ed]" the symptoms of COVID-19. *See id.* ¶¶ 173–74. So, over Plaintiff's objections, *see id.* ¶ 175, Hearing 2 went forward without him, *id.* ¶ 176. Afterwards, the ALJ ordered Plaintiff to show cause why he failed to appear. *Id.* ¶ 177. Despite Plaintiff's responsive medical and legal justifications, the ALJ issued an Order of Dismissal ("2022 Dismissal Order") on September 28, 2022, that, according to Plaintiff, (1) reinstated the decision from Hearing 1;[6] and (2) cited in its reasoning Plaintiff's "inexcusable non-appearance." *Id.* ¶¶ 178–79.

Plaintiff again sought review from the Appeals Council. *Id.* ¶ 182. Plaintiff alleges that he mailed the Appeals Council his appellate brief and evidentiary submissions, and that those materials were later returned to him unopened. *Id.* ¶¶ 182, 184. On January 22, 2023, Plaintiff received a notice from the Appeals Council—signed by

---

[6] As discussed in Section III.C.1, *infra*, this characterization of the effect of the 2022 Dismissal Order is not quite right.

Defendant Administrative Appeals Judge Laura Middleton (the "AAJ" or "AAJ Middleton") and dated January 11, 2023—denying review of Plaintiff's appeal and thus upholding the ALJ's 2022 Dismissal Order.  *See id.* ¶ 185.

### 2.   *Application for Early Retirement Benefits*

Plaintiff's remaining allegations pertain to the events that led him to apply for early retirement benefits.  This section of the SAC—though more opaque than Plaintiff's earlier allegations—is relatively brief.

So far as the Court can tell, the trouble started in April of 2020 with a call Plaintiff received from Defendant Ms. Kawano ("Kawano"), who allegedly works at one of the Agency's California field offices.  *Id.* ¶ 409.  On this call, Kawano informed Plaintiff "he had to apply for any and all benefits to which he was entitled in order to remain qualified under Title XVI," including early retirement benefits.  *Id.*  Plaintiff objected, explaining that applying for early retirement benefits would reduce his future income relative to what he would receive if he waited to draw benefits until after he reached retirement age.  *See id.* ¶ 413.  In response, "Kawano told Plaintiff he would lose all disability benefits if he did not apply" for early retirement benefits.  *Id.* ¶ 414.

Plaintiff agreed to apply for early retirement benefits on the call because of the "surprise, confusion," "threat of losing" necessary income, and "the urgency to make a choice prior to the end of the call."  *Id.* ¶ 420.  Plaintiff later discovered that this decision caused him to "forfeit[] 30% of his future [retirement benefits] income."  *Id.* ¶ 421.  His application for early retirement benefits also led to the "deduct[ion]" of "a major portion of Plaintiff's Title XVI benefits."  *Id.* ¶ 428.

Plaintiff claims he was not provided notice ahead of the April 2020 call nor informed how he could appeal this change in his benefits.  *See id.* ¶¶ 487–88.  Plaintiff sent written objections and questions to Kawano the next day, but he never received a response.  *Id.* ¶ 423.  No hearing was ever held on these matters.  *See id.* ¶ 492.

/ / /

/ / /

### B.      *"Counts" Listed in the SAC*

The SAC purports to raise an enormous number of claims, many of which appear to overlap in various ways, against different combinations of defendants.   The Court will attempt to summarize these claims by grouping them as the SAC has.

First and foremost, Plaintiff seeks to reverse the decision to deny his Title II disability benefits pursuant to 42 U.S.C. § 405(g).   *See id.* ¶¶ 2, 258–260.   Plaintiff supports his claims with arguments based on Articles II and III of—and the Fifth and Fourteenth Amendments to—the United States Constitution. *See id.* ¶¶ 264–90.   Plaintiff also contends the Agency erred in its determination in at least twelve distinct ways.  *See id.* ¶¶ 291–397.   Plaintiff seeks several forms of relief; aside from disability benefits, he requests, *inter alia*, declaratory relief, a tax-free designation, payment "denominated in $50 coins," injunctive relief to protect him and his "known associates" (purportedly including former President Donald Trump), "attorney-in-kind fees," and sanctions.  *See id.* at 76–83.

Next, Plaintiff asserts sixteen claims against Kawano and the Commissioner relating to the allegedly coercive manner in which he was forced to apply for early retirement benefits.  *See id.* at 94–119.   These range from tort claims for "duress" and intentional misrepresentation, *id.* at 94, 98; to claims asserting cruel and unusual punishment and due process violations, *id.* at 106–10.   The SAC levies an additional negligence claim against the Commissioner alone.  *See id.* at 119–22.   As the bases for these causes of action, Plaintiff invokes various federal and state statutes and regulations, with the Federal Tort Claims Act ("FTCA"), 42 U.S.C. § 1988, and 38 C.F.R. § 14.600 cited most frequently. *See id.* at 94–119.   Beyond the reversal of the reduction of his Title XVI and future retirement benefits, Plaintiff seeks compensatory, punitive, and treble damages, among other forms of relief.  *See id.* ¶¶ 678–79.

In the remaining sections of the SAC, Plaintiff raises (1) discrimination claims against the Commissioner and ALJ, alleging that holding Hearing 2 during the pandemic violated the ADA, *see id.* ¶¶ 723–54; (2) fraud claims against the Commissioner, the ALJ, and the AAJ for allegedly making false statements on the administrative record, *see id.*

¶¶ 758–854, 874–88; (3) "conspiracy of rights" and "oppression" claims against the Commissioner, the ALJ, the AAJ, and Does 4 through 100, *see id.* ¶¶ 855–73, 889–919; and (4) civil claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68, against all Defendants, *see id.* ¶¶ 946–75.  For the RICO claims alone, Plaintiff seeks $7,000,000 in compensatory damages and $3,000,000 in "pain and suffering damages."  *Id.* at 168.

## III.   Analysis

As illustrated by the foregoing summary, the SAC presents an intricate and sometimes perplexing labyrinth of characters and claims.  To navigate this maze, the Court will begin with the issue of sovereign immunity and, thereby, the Court's subject matter jurisdiction.  The Court will then define the proper defendant in this action, turn to the topics of administrative exhaustion, and ultimately arrive at the question of whether the SAC complies with the applicable minimum pleading standard.

### A.   *Subject Matter Jurisdiction*

#### 1.   *Overview of Sovereign Immunity*

Under the doctrine of sovereign immunity, courts lack subject matter jurisdiction over suits against the United States unless the Government has given its consent to be sued. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.").

"To consent to suit, the Government must 'unequivocally' waive its immunity in the text of a statute."  *Haight v. United States*, No. 1:17-CV-00014-CL, 2017 WL 4180460, at *3 (D. Or. Sept. 21, 2017) (quoting *Gomez–Perez v. Potter*, 553 U.S. 474, 491 (2008)). The party suing the federal government bears the burden of identifying an express statutory waiver of sovereign immunity.  *See Hajro v. USCIS*, 811 F.3d 1086, 1101 (9th Cir. 2016). "[A]ny ambiguities in the statutory language are to be construed in favor of immunity." *Daniel v. Nat'l Park Serv.*, 891 F.3d 762, 769 (9th Cir. 2018) (emphasis omitted) (quoting *FAA v. Cooper*, 566 U.S. 284, 290 (2012)).

1    Plaintiff cannot circumvent sovereign immunity by suing a federal agency and

2   federal officials.  Plaintiff purports to proceed against each individual Defendant in his or

3   her official and personal capacities.  SAC ¶¶ 15–18.  "In sovereign immunity analysis, any

4   lawsuit against an agency of the United States or against an officer of the United States in

5   his or her official capacity is considered an action against the United States."  *Balser v.*

6   *Dep't of Just.*, 327 F.3d 903, 907 (9th Cir. 2003).  So, Plaintiff cannot bring his claims—

7   save potential claims brought against certain Defendants in their personal capacities—

8   without identifying an immunity waiver.

9        *2.    Claims Relating to Social Security Benefits*

10       Section 405(g) provides a limited waiver of sovereign immunity for judicial review

11   of certain Agency decisions.  Accordingly, the Court first evaluates its subject matter

12   jurisdiction with respect to two potential § 405(g) claims: one regarding Title II benefits,

13   and the other involving retirement and Title XVI income.

14          a.    Legal Framework

15       The Social Security Act includes a sovereign immunity waiver in the form of

16   § 405(g).  That provision provides for judicial review under limited circumstances:

17          Any individual, after any final decision of the Commissioner of
           Social Security made after a hearing to which he was a
18          party, . . . may obtain a review of such decision by a civil action
           commenced within sixty days after the mailing to him of notice
19          of such decision . . . .
20

21   42 U.S.C. § 405(g).  Section 405(g)'s waiver "is a narrow one" in part because, by its

22   terms, it applies only to "final decision[s]" of the Commissioner.  *Walker v. Colvin*,

23   No. 5:13-CV-01762 EJD, 2013 WL 5737701, at *2 (N.D. Cal. Oct. 21, 2013).

24       By operation of § 405(h), a plaintiff challenging an Agency decision regarding her

25   benefits can proceed through § 405(g) and *only* § 405(g).  *See* 42 U.S.C. § 405(h) ("No

26   findings of fact or decision of the Commissioner of Social Security shall be

27   reviewed . . . except as herein provided."); *see also El v. Berryhill*, No. C17-1383-MAT,

28   2018 WL 348471, at *1 (W.D. Wash. Jan. 10, 2018) ("Section 405(g) . . . serves as the

exclusive jurisdictional basis for review of administrative decisions concerning claims for benefits under Titles II and XVI of the Social Security Act."). Section 405(h) applies "even if [a plaintiff's claims] raise constitutional issues . . . and regardless of the relief sought." *Kenney v. Barnhart*, No. SACV 05-426 MAN, 2006 WL 2092607, at *6 (C.D. Cal. July 26, 2006). In this way, § 405(h) "'channel[s]' . . . virtually all legal attacks through the [SSA]." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000).

The Supreme Court has interpreted § 405(g)'s final-decision-made-after-a-hearing requirement to contain two elements: "first, a 'jurisdictional' requirement that claims be presented to the agency, and second, a 'waivable . . . requirement that the administrative remedies prescribed by the Secretary be exhausted.'" *Smith v. Berryhill*, 139 S. Ct. 1765, 1773 (2019) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976)). As "exhaustion itself is not a jurisdictional prerequisite," *id.* at 1779, the Court will set that issue aside for now and address here only (1) whether the SAC raises § 405(g) claims; and (2) if yes, whether Plaintiff has met the presentment requirement for any such claim.

b.   Discussion

i.   Denial of Title II Benefits

Regarding Plaintiff's claim for Title II benefits, which has traveled up and down the Agency's decision-making ladder, the SAC's voluminous allegations leave the Court with little doubt that Plaintiff has sufficiently pled presentment. *See, e.g.*, *Harris v. Acts Syrene Apartments*, No. 22-CV-00405-JCS, 2022 WL 767190, at *5 (N.D. Cal. Mar. 13, 2022) ("One way to satisfy the presentment requirement is by requesting reconsideration of an initial determination.").

The Court notes, however, that § 405(g)'s waiver of sovereign immunity allows courts only to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner." 42 U.S.C. § 405(g). To the extent Plaintiff wishes to pursue forms of relief—like money damages—that fall outside of § 405(g)'s scope, the doctrine of sovereign prevents him doing so. *See, e.g.*, *Kenney*, 2006 WL 2092607, at *5 ("Section 405(g) does not contain a damages remedy.").

ii.     *Retirement Benefits and Title XVI Benefits*

The SAC also contains allegations involving Plaintiff's early retirement, future retirement, and Title XVI benefits.  As discussed above, this portion of the SAC alleges Plaintiff—under pressure from Kawano—applied for early retirement benefits.  Per Plaintiff, this resulted in, among other consequences, a reduction in Plaintiff's future retirement benefits and Title XVI benefits.  *See* SAC at 84–86.

Though these allegations are connected to social security benefits, the Court concludes Plaintiff did not raise a § 405(g) claim here.  In contrast to the allegations made earlier in the SAC, Plaintiff does not mention § 405(g) in his discussion of the Kawano call and its consequences.[7]  Indeed, rather than seeking review of a "final decision of the Commissioner," 42 U.S.C. § 405(g), the allegations in this section of the SAC are used to support statutory and constitutional tort claims levied against individual defendants, *see id.* SAC at 94–122 (asserting eighteen counts, including negligence and trespass to chattels claims).  And as discussed at length in Section III.A.3, *infra*, Plaintiff cannot pursue any such claims by function of §§ 405(g) and 405(h).  Consequently, all claims attributed to the SAC's Kawano-call-related allegations must be dismissed for lack of subject matter jurisdiction.[8]

_____

[7] For this reason, any Title XVI or retirement benefits claims in the SAC would fail under the pleading standards set by the Federal Rules of Civil Procedure's Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g), which are discussed in Section III.D, *infra*.

[8] To the extent a hidden § 405(g) claim could possibly be found in this section of the SAC, said claim would not satisfy the presentment requirement.  This is because the purpose of requiring presentment is "to 'assure[] the agency greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts.'"  *Haro v. Sebelius*, 747 F.3d 1099, 1113 (9th Cir. 2014) (alteration in original) (quoting *Ill. Council*, 529 U.S. at 13).

Beyond the non-viable tort claims, the Kawano-related allegations implicate three benefits determinations potentially amenable to § 405(g) review.  First, Plaintiff alleges he "submit[ted] an application for [early retirement benefits]," SAC ¶ 420, which would likely count as "presenting" his claim for those specific benefits, *see Holcomb v. Colvin*, No. 3:13-CV-05256-KLS, 2014 WL 51148, at *2 (W.D. Wash. Jan. 7, 2014) (explaining presentment is met "when a claim for benefits is made and the Commissioner 'determines [whether] the claimant meets the eligibility requirements for *those* benefits'") (emphasis added) (quoting *Briggs v. Sullivan*, 886 F.2d 1132, 1139 (9th Cir. 1989))).  The SAC does not, however,

### 3.   Remaining Claims

The remainder of the SAC raises constitutional claims and federal and state statutory claims, asserting causes of action ranging from negligence and intentional misrepresentation to violations of the Eighth Amendment and the ADA.  *See generally* SAC.   Through these claims, Plaintiff seeks a cornucopia of remedies, including $7,000,000 in compensatory damages for his civil RICO claim alone, *see id.* ¶ 976(B).

Though each of the above claims are levied against individual SSA officers and employees, Plaintiff must still contend with sovereign immunity.   As noted above, "sovereign immunity doctrine applies with equal force to suits against a federal employee in his official capacity."  *Kenney*, 2006 WL 2092607, at *5.   And here, Plaintiff sues Defendants in their official capacities.[9]  *See* SAC ¶¶ 14–18.  So, "the fact that Plaintiff has named the Commissioner as a defendant, rather than the United States, does not avoid application of the sovereign immunity doctrine."  *Kenney*, 2006 WL 2092607, at *5.

By way of § 405(h), § 405(g) is the only immunity waiver available to litigants whose claims are connected to SSA benefits determinations.  Per § 405(h), "[n]o action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter."   42 U.S.C. § 405(h).   This "arising under" language

_____

challenge the Commissioner's eligibility determination regarding early retirement benefits.  Conversely, Plaintiff *does* contest—albeit briefly—changes made to his Title XVI and future retirement benefits.  *See* SAC ¶ 678.  But nothing in the SAC suggests Plaintiff brought his claims regarding *those* entitlements to the Agency.  So, ultimately, the SAC gives no indication that the SSA has had the opportunity to "apply, interpret, or revise" the rules relevant to Plaintiff's contentions regarding his Title XVI and future retirement benefits.

[9] To the extent Plaintiff brings any claims against individual Defendants in their personal capacities, *see* SAC ¶¶ 14–18, they still fail.  *In Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court recognized a private cause of action for damages against federal officials in their personal capacities for the violation of constitutional rights.  But there is no *Bivens* remedy "for the denial of social security benefits."  *Butler v. Apfel*, 144 F.3d 622, 624 (9th Cir. 1998) (citing *Schweiker v. Chilicky*, 487 U.S. 412, 423–24 (1988)).  Nor could Plaintiff pursue tort claims against individual defendants for acts done within the scope of their employment through the FTCA because, as outlined below, 42 U.S.C. § 405(h) prevents him from doing so.

encompasses any "claim in which 'both the standing and the substantive basis for the presentation' of the claims is the Social Security Act." *Hooker v. U.S. Dep't of Health & Hum. Servs.*, 858 F.2d 525, 529 (9th Cir. 1988) (quoting *Weinberger v. Salfi*, 422 U.S. 749, 760–61 (1975)).   Put another way, § 405(h) reaches claims that are "inextricably intertwined" with a claim for benefits.  *Kaiser v. Blue Cross of Cal.*, 347 F.3d 1107, 1112 (9th Cir. 2003) (quoting *Heckler v. Ringer*, 466 U.S. 602, 614 (1984)).  So, claims that "have at their core a challenge to a decision made regarding disability benefits . . . may be raised under [§] 405(g) alone." *Kenney*, 2006 WL 2092607, at *6.

As the SAC's remaining claims ask the Court to evaluate the Agency's handling of Plaintiff's application for benefits, they "arise under" the Social Security Act and must proceed through § 405(g) or not at all.  *See, e.g.*, *Henderson v. Colvin*, No. 6:14-CV-1053-PA, 2015 WL 6598713, at *2 (D. Or. Oct. 29, 2015) (applying § 405(h) where "disability discrimination claims [were] based on the denial of Social Security benefits"); *Stansberry v. United States*, No. 4:18-CV-01563-KAW, 2018 WL 5619741, at *8 (N.D. Cal. Oct. 29, 2018) ("[T]he administration and handling, however negligent, of Plaintiff's . . . benefits undeniably 'arises under' the Social Security Act because it deals exclusively with the daily operations, legal procedures[,] and protocol of the SSA . . . .").

Consequently, the Court "lacks subject matter jurisdiction over any of Plaintiff's claims or requests for relief premised on something other than judicial review of the ALJ's decision as provided by 42 U.S.C. § 405(g)." *Walker*, 2013 WL 5737701, at *3.  These include Plaintiff's claims for monetary damages, as Congress did not provide for such damages "for unconstitutional conduct that leads to the wrongful denial of [social security] benefits" or "for emotional distress or . . . other hardships suffered because of delays in the[] receipt of . . . benefits." *Schweiker v. Chilicky*, 487 U.S. 412, 424–25 (1988); *see also Timothy M. v. Berryhill*, No. 6:18-CV-00384-YY, 2019 WL 2427963, at *3 (D. Or. May 23, 2019) (holding "compensatory" and "punitive damages are not authorized under 42 U.S.C. § 405(g)"), *report and recommendation adopted*, 2019 WL 2422482 (D. Or. June 10, 2019).  Also unavailable are "request[s] for a protective order or injunction," as

such relief likely "falls outside of the scope of what c[ould] be awarded against Defendant" in this case under § 405(g).  *Walker*, 2013 WL 5737701, at *3.

Plaintiff cannot circumvent § 405(g) by relying on the FTCA to raise his claims against the SSA or its employees.  The SAC frequently invokes the FTCA, but "§ 405(h) specifically deprives the Court of subject matter jurisdiction over claims arising under [the FTCA] when," as here, "they also arise under . . . the Social Security Act."  *Geschke v. Soc. Sec. Admin.*, No. C06-1256C, 2007 WL 1140281, at *11 (W.D. Wash. Apr. 17, 2007); *see also Stansberry*, 2018 WL 5619741, at *8 (explaining courts routinely "dismiss[] claims deceptively pled as tort or non-SSA claims because they still undoubtedly arose under the Social Security Act").

Nor can Plaintiff establish this Court's jurisdiction under 5 U.S.C. § 702 (right of action provided in the Administrative Procedure Act ("APA")) or 28 U.S.C. § 1331 (federal question jurisdiction), as he attempts to do.  SAC ¶ 43.  The APA "is not an independent basis of subject matter jurisdiction."  *Kim Phuong Nguyen v. Astrue*, No. 10-CV-1927-IEG JMA, 2011 WL 2470518, at *4 (S.D. Cal. June 21, 2011).  Instead, subject matter jurisdiction to hear APA claims lies in the other provision Plaintiff cites: 28 U.S.C. § 1331.  *See Geschke*, 2007 WL 1140281, at *12.  The same is true for claims brought under the other federal statutory and constitutional provisions sprinkled throughout the SAC, including Plaintiff's ADA claims.  *See id.* at *10.  And, as with the FTCA, § 405(h) "bars general federal question claims (28 U.S.C. § 1331) . . . when such claims arise under . . . the Social Security Act."  *Id.* at *5; *see also Kenney*, 2006 WL 2092607, at *6 (holding "general federal question jurisdiction under 28 U.S.C. § 1331 is not available" in Title II benefits case).

Given the above, the Court lacks subject matter jurisdiction over all claims in the SAC except for Plaintiff's § 405(g) claim—the permissible scope of which is defined below—for judicial review of the final Agency decision pertaining to his Title II benefits.

/ / /

/ / /

### B.   Proper Defendant

Although the SAC lists several individual defendants, "the only proper defendant in an action seeking judicial review of an administrative decision to deny benefits is the Commissioner of Social Security." *Caglia v. Appeals Council Off. of Disability Adjudication & Rev.*, No. 1:19-CV-1376- JLT, 2019 WL 5189202, at *2 (E.D. Cal. Oct. 15, 2019); *see also* 20 C.F.R. § 422.210(d); *Hernandez v. Kijakazi*, No. 2:19-CV-10884-SP, 2021 WL 6496805, at *1 (C.D. Cal. Dec. 2, 2021) ("Pursuant to 42 U.S.C. § 405(g), the Commissioner is the proper party when seeking judicial review of a final decision of the Commissioner."). Accordingly, ALJ Benham, AAJ Middleton, Kawano, and Does 4 through 100 are improper defendants and will be dismissed from this case.

### C.   Exhaustion

Section 405(g) includes a "waivable . . . requirement that the administrative remedies prescribed by the Secretary be exhausted." *Smith*, 139 S. Ct. at 1773 (quoting *Mathews*, 424 U.S. at 328). Relatedly, § 405(g) empowers the SSA to define the steps necessary to exhaust a claim through regulations. *See id.* at 1773–74. In most cases, these steps are: (1) an initial determination of eligibility for benefits; (2) reconsideration of the initial determination; (3) a hearing before an ALJ; and (4) Appeals Council review of the ALJ's decision. *See id.* at 1772. To pursue judicial review, the claimant must file her action in federal court within sixty days of receiving notice of the Appeals Council's decision. 20 C.F.R. § 404.981.

In the SAC's only remaining claim, *see supra* Sections III.A.2.b and III.A.3, Plaintiff seeks judicial review of an Agency decision regarding his Title II benefits that he alleges became final after the Appeals Council's 2023 denial of review. *See* SAC ¶¶ 218, 222. To screen this claim, the Court first defines the substance of the Agency decision Plaintiff identifies, then evaluates whether Plaintiff has exhausted his claim.

#### 1.   Agency Decision at Issue

Plaintiff frames his § 405(g) claim as challenging the reasoning in the ALJ's post-Hearing-1 decision. To that end, Plaintiff contends that the ALJ's original decision was

"reinstalled" by the ALJ after Plaintiff failed to appear for Hearing 2, *see id.* ¶ 226, and became final when the Appeals Council declined to review the ALJ's September 2022 Dismissal Order, *see id.* ¶¶ 218, 222. Plaintiff's characterization of his claim is flawed in two ways.

As an initial matter, Plaintiff's focus on the ALJ's original decision is misplaced. As the Appeals Council vacated the ALJ's original decision and remanded the case with additional instructions, *see* ECF No. 23-5 at 3–5,[10] the Post-Hearing-1 determination never became the Commissioner's "final decision," *see* 20 C.F.R. § 404.955(a); *Kearney v. Colvin*, 14 F. Supp. 3d 943, 949 (S.D. Ohio 2014) ("An ALJ's decision on the merits of a disability application does not become final . . . if the Appeals Council vacates that decision and remands the matter for further proceedings."). Nor did the 2022 Dismissal Order resurrect the vacated decision. Typically, when an ALJ dismisses the claimant's request for a hearing, the most recent extant *pre-hearing* determination—rather than some previously vacated decision—remains in effect. *Cf. Daneka M. v. Saul*, No. C19-1560-MAT, 2020 WL 2199493, at *1 (W.D. Wash. May 6, 2020). The SAC's allegations and incorporated exhibits appear to confirm that the same outcome resulted here.[11]

More importantly, the SAC targets a *procedural* decision made by the ALJ, not an ALJ's determination on the merits of Plaintiff's Title II benefits claim. Per Plaintiff, the 2022 Dismissal Order was based on the ALJ's finding that Plaintiff had not shown good cause for failing to attend Hearing 2. Such a dismissal rests on procedural grounds and does not speak to the *merits* of the underlying benefits claim. *See Kinsley v. Comm'r of Soc. Sec.*, No. 2:19-CV-00991-BAT, 2019 WL 4858794, at *3 (W.D. Wash. Oct. 2, 2019). So, in seeking review of the 2022 Dismissal Order, Plaintiff asked the Appeals Council to

---

[10] Pin citations to exhibits attached to Plaintiff's earlier filings refer to the CM/ECF page numbers electronically stamped across the top of each page.

[11] Plaintiff's notes show that the ALJ dismissed "the request for hearing dated December 5, 2014," and left "the determination dated October 9, 2014," in effect. ECF No. 23-43 at 7. The 2022 Dismissal Order thus left in place a determination made two years before Hearing 1 was held. *See* SAC ¶ 113.

consider whether his nonattendance was excusable for good cause, *not* whether Plaintiff was eligible for benefits. And it was the ALJ's good cause determination that became binding after review was denied in January of 2023. *See* 20 C.F.R. § 404.959.

Accordingly, the Court must determine whether the ALJ's 2022 decision to dismiss Plaintiff's request for a hearing based on his non-appearance constitutes a "final decision . . . made after a hearing" for the purposes of satisfying § 405(g)'s exhaustion requirement.

### 2. Discussion

Because § 405(g)'s hearing requirement "is intended to ensure claimants do not bypass . . . administrative procedure[s]," a "claimant who simply refuses to attend a hearing" typically "is not entitled to judicial review of a dismissal for failure to attend." *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). However, judicial review may be available where "the claimant alleges that the agency denied him a hearing in violation of its own regulations." *Id.* (quoting *Howard v. Heckler*, 661 F. Supp. 654, 656 (N.D. Ill. 1986)). This case resembles the latter scenario more than the former. It appears Plaintiff did not "simply refuse" to attend. Instead, he allegedly was "physically prevented" from attending Hearing 2 due to the Agency's own COVID-19 policies. *See* SAC ¶¶ 173–75.

The Supreme Court's decision in *Smith* provides further guidance. There, the claimant was denied benefits after an ALJ hearing, and the Appeals Council denied his appeal as untimely. *Smith*, 139 S. Ct. at 1771. The claimant sought judicial review of the untimeliness decision, arguing that "he was wrongly prevented from continuing to pursue his primary claim for benefits." *Id.* at 1778. The Supreme Court held that review was available because the claimant had (1) "received a claim-ending timeliness determination from the agency's last-in-line decisionmaker"; after (2) "bringing his claim past the key procedural post (a hearing) mentioned in § 405(g)." *Id.* at 1777.

*Smith* is not on all fours with this case, as Plaintiff is not appealing the results of an ALJ hearing on the merits. That said, though it was later vacated, Plaintiff *did* secure an ALJ decision on the merits of his application earlier in his administrative journey. And

even were that not the case, the Supreme Court left open the possibility of judicial review absent a hearing.  *See id.* at 1777 n.17 ("[T]he Court's precedents also make clear that a hearing is not always required.").  Indeed, some courts have interpreted *Smith* as providing "grounds to believe" a claimant could satisfy § 405(g)'s exhaustion requirement when challenging a dismissal for failure to appear.  *See Wilson v. Comm'r of Soc. Sec.*, No. 21-10278, 2021 WL 3878252, at *2–3 (11th Cir. Aug. 31, 2021); *T.W. v. Comm'r of Soc. Sec.*, No. 21-CV-07822-SVK, 2023 WL 2167398, at *3 (N.D. Cal. Feb. 21, 2023).

Other considerations discussed in *Smith* also weigh in Plaintiff's favor.  Here, as in *Smith*, the Appeals Council's decision to deny review of the ALJ's good cause determination was not "merely collateral" to substantive matters, as it "call[ed] an end to a proceeding in which a substantial factual record ha[d] already been developed and on which considerable resources ha[d] already been expended."  139 S. Ct. at 1777.  Indeed, it would be disingenuous to say that Plaintiff "faltered" at an early step in the process, *see id.* at 1777 n.17, as he pursued his benefits claim administratively for approximately *ten years* before the Appeals Council put a stop to his efforts.  And as the *Smith* Court explained, "While Congress left it to the SSA to define the procedures that claimants . . . must first pass through, Congress has not suggested that it intended for the SSA to be the unreviewable arbiter of whether claimants have complied with those procedures."  *Id.* at 1777 (internal citation omitted).

Consequently, the Court is satisfied that, given the circumstances of this case, the ALJ's decision to dismiss Plaintiff's request for a hearing for failing to appear—made binding after the Appeals Council denied review—is a "final decision . . . made after a hearing" within the meaning of § 405(g).  Plaintiff has thus sufficiently demonstrated exhaustion to survive screening on his claim for judicial review of that specific agency decision.[12]

---

[12] Plaintiff primarily asks the Court to rule on the merits of his benefits application.  *See, e.g.*, SAC ¶ 263.  As the Court liberally construes the SAC to challenge the Agency's procedural "good cause" decision, however, it is not obvious that the Court could reach the merits in this action.  In *Smith*, the Supreme Court

### D.      Compliance with Minimum Pleading Standards

Unlike in most civil cases, the minimum pleading standards applicable to complaints initiating § 405(g) social security actions are governed by the Federal Rules of Civil Procedure's Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g) (the "Supplemental Rules"), not Federal Rule of Civil Procedure 8(a).  *See Giselle N. v. Kijakazi*, No. 23-CV-04293-PHK, 2023 WL 6307947, at *2 (N.D. Cal. Sept. 26, 2023).  To that end, the pleading standard set out in Supplemental Rule 2 "supersede[s]" the "corresponding rule[]" in the Federal Rules of Civil Procedure "on pleading."  Fed. R. Civ. P. Supp. Soc. Sec. R. 2022 advisory committee note.

The Court previously declined to apply the Supplemental Rules to Plaintiff's FAC, as they do not operate in actions that contain claims beyond one for § 405(g) review.  *See* ECF No. 39 at 10–11 (citing Fed. R. Civ. P. Supp. Soc. Sec. R. 2022 advisory committee note).  But as the only surviving portion of the SAC constitutes "an action under 42 U.S.C. § 405(g) for review on the record of a final decision of the Commissioner of Social Security that presents only an individual claim," the Court looks to the Supplemental Rules here.  Fed. R. Civ. P. Supp. Soc. Sec. R. 1(a).

To meet the minimum pleading requirements set by Supplemental Rule 2(b)(1), a complaint "must":

> (A) state that the action is brought under § 405(g);
> (B) identify the final decision to be reviewed, including any identifying designation provided by the Commissioner with the final decision;
> (C) state the name and the county of residence of the person for whom benefits are claimed;
> (D) name the person on whose wage record benefits are claimed;

---

noted that "there would be jurisdiction for a federal court to proceed to the merits" if the "reviewing court disagree[d] with the procedural ground for dismissal."  139 S. Ct. at 1779.  Whether the same is true in this case, where the only post-hearing administrative decision on the merits was vacated, is not immediately clear.  Moreover, *Smith* explained that, in most cases, "a court should restrict its review to the procedural ground that was the basis for the Appeals Council dismissal and (if necessary) allow the agency to address any residual substantive questions in the first instance."  *Id.* at 1780.  That said, the Court need not and thus will not resolve these questions at this time.

and
    (E) state the type of benefits claimed.

Fed. R. Civ. P. Supp. Soc. Sec. R. 2(b)(1).[13]

The SAC satisfies Supplemental Rule 2(b)(1)'s five requirements. First, the SAC explicitly brings a "disability appeal action . . . under . . . 42 U.S.C. § 405(g)." SAC ¶ 46. Second, Plaintiff alleges he filed for "Title II benefits on or about May 22, 2012," *id.* ¶ 69; that the ALJ issued an "Order of Dismissal" on September 28, 2022, *id.* ¶ 216; and that the Appeals Council "den[ied] . . . review and thereby affect[ed] [sic] a final decision" in a notice dated January 11, 2023, *id.* ¶ 218. This is sufficient to identify the final decision to be reviewed. *See Giselle N.*, 2023 WL 6307947, at *3. As to the third and fourth requirements, the SAC (1) specifies that Plaintiff is a resident of San Diego County; and (2) incorporates Plaintiff's Identities Declaration (ECF No. 7), which provides Plaintiff's full name, address, and date of birth, as well as the last four digits of his social security number. *See* SAC ¶ 13. Fifth, the SAC notes in relevant part that Plaintiff's § 405(g) challenge pertains to his claim for Title II disability benefits. *See id.* ¶ 46.

Accordingly, Plaintiff has sufficiently pled his § 405(g) claim of the ALJ's September 28, 2022, dismissal—made final after the Appeals Council denied review—of Plaintiff's request for a hearing.

/ / /

/ / /

/ / /

---

[13] Meanwhile, under Supplemental Rule 2(b)(2), a complaint "*may*" but need not "include a short and plain statement of the grounds for relief." Fed. R. Civ. P. Supp. Soc. Sec. R. 2(b)(2) (emphasis added). This relaxed approach makes sense because of "the essentially appellate character of actions that seek only review of an individual's claims on a single administrative record." Fed. R. Civ. P. Supp. Soc. Sec. R. advisory committee note. One could imagine a case, however, in which a complaint includes *so much* unnecessary detail that it no longer provides the Agency with sufficient notice of the benefits claim being appealed, even if the information required by Supplemental Rule 2(b)(1) is technically present *somewhere*. Indeed, if the SAC does not fit that description, it cannot be far off. Still, given Plaintiff's efforts in improving the SAC and the benefit of the doubt his pleadings are due, the Court will analyze the SAC under Supplemental Rule 2(b)(1).

23-CV-481 JLS (AHG)

**CONCLUSION**

In light of the foregoing, the Court:

(1)     **GRANTS IN PART AND DENIES IN PART** Plaintiff's *ex parte* Motion (ECF No. 50), as detailed above;

(2)     **DISMISSES WITHOUT PREJUDICE**[14] and **WITHOUT LEAVE TO AMEND**[15] all claims for relief in the SAC for lack of subject matter jurisdiction pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and (iii) **except** for Plaintiff's 42 U.S.C. § 405(g) action for judicial review of the Commissioner's final decision[16] declining to excuse Plaintiff's failure to appear at the August 9, 2022 hearing;[17]

(3)     **DISMISSES**, in their individual and official capacities, Defendants ALJ Eric Benham, AAJ Laura Middleton, Ms. Kawano, and Does 4 to 100 from this case; and

(4)     **DIRECTS** the Clerk of the Court to transmit a notice of electronic filing to the Social Security Administration's Office of General Counsel and to the United States Attorney's Office for the Southern District of California in lieu of service of a summons in accordance with Supplemental Rule 3.  *See* Fed. R. Civ. P. Supp. Soc. Sec. R. 3 ("The court must notify the Commissioner of the commencement of the action by transmitting a Notice of Electronic Filing to the appropriate office within the Social Security Administration's

/ / /

---

[14] "[I]n general, dismissal for lack of subject matter jurisdiction should be without prejudice." *Tijerino v. Stetson Desert Project, LLC*, 934 F.3d 968, 971 n.2 (9th Cir. 2019).

[15] Given the deficiencies discussed above relating to the doctrine of sovereign immunity, § 405(g), and § 405(h), the Court finds that granting Plaintiff leave to reassert the dismissed claims would be futile in this case.  *See, e.g.*, *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) (explaining dismissal without leave to amend is proper when amendment would be futile).

[16] For clarity's sake, the Court again specifies that the SAC's surviving § 405(g) claim challenges the ALJ's September 28, 2022, dismissal of Plaintiff's hearing request for failure to appear, as made binding when the Appeals Council denied review in a notice dated January 11, 2023.  *See* SAC ¶¶ 216, 218.

[17] The Court cautions Plaintiff that this "*sua sponte* screening and dismissal procedure is cumulative of, not a substitute for, any subsequent Rule 12[] motion that the defendant may choose to bring." *Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007).

Office of General Counsel and to the United States Attorney for the district where the action is filed.").

      **IT IS SO ORDERED.**

Dated:  May 6, 2024

                                        Hon. Janis L. Sammartino
                                        United States District Judge